# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA

IN RE:

    Sheila Hambright                     Case No: 93-11016

Debtor(s)

## APPLICATION FOR UNCLAIMED FUNDS

       Dilks & Knopik, LLC, assignee to PNC Bank, National Association, claimant, hereby petitions the Court for $441.69, which is the sum of all monies being held in the Registry of the Clerk, United States Bankruptcy Court, as unclaimed funds, which are due to Amsouth, creditor.

       The creditor did not receive the dividend check in the above case for the following reason:

Dividends were not collected by the creditor, Amsouth. AmSouth Bank sold its Alabama bank branches to RBC Centura Bank, as evidenced by Exhibit A. RBC Centura Bank changed it name to RBC Bank and subsequently merged with and into PNC Bank, National Association, as evidenced by Exhibit B. Dilks & Knopik, LLC has purchased and been assigned the claim, as evidenced by Exhibit C.

       The claimant/creditor's current mailing address is:

       Dilks & Knopik, LLC
       Attn: Brian J. Dilks
       35308 SE Center Street
       Snoqualmie, WA 98065
       (425) 836-5728
       Last four digits of SSN/TIN: 9851

Dated: February 8, 2017

                               Brian J. Dilks *
                               Dilks & Knopik, LLC

Sworn and subscribed to, before me
this 8 day of February, 2017

_____
Andrew T. Drake, Notary Public
for State of Washington, County of King
Commission Expires: September 9, 2019
*Attached is the petitioner's (Brian J. Dilks) Photo Identification

Case 93-11016   Doc 22   Filed 02/16/17   Entered 02/16/17 10:50:31   Desc Main
Document    Page 1 of 27

## CERTIFICATE OF SERVICE OF APPLICATION
## ON U.S. ATTORNEY

Notice is hereby given that on <u>February 8, 2017</u> a <u>copy</u> of the Application for Release of Unclaimed Funds was served on the U.S. Attorney for the Southern District of Alabama by U.S. Mail at the following addresses:

United States Attorney
Riverview Plaza
63 S. Royal, Suite 600
Mobile, AL 36602

Dated: February 8, 2017

Brian J. Dilks
Dilks & Knopik, LLC

RBC Home | Search | Site Map | Contact Us | Legal Terms | Français

Other RBC Sites:

| Banking | Investments | Capital Markets |

## Media Newsroom

**About RBC**

Corporate Profile

Corporate Governance

History

### News Releases

**News & Information**

Investor Relations

▼Media Newsroom

  ▼News Releases

  ⬩ Editorial Edge

  ▶ RBC Executive Profiles

  ▶ Speeches

  ▶ RBC Facts

  ▶ RBC Purchasing Managers' Index

  ▶ RBC Canadian Consumer Outlook Index

  ⬩ RBC U.S. Consumer Outlook Index

  ▶ Special Reports

**RBC Centura expands footprint in fast-growing Southeastern U.S.**

**Acquires 39 AmSouth branches in Alabama**

RALEIGH, NC, November 1, 2006 — RBC Centura Bank, a wholly owned subsidiary of Royal Bank of Canada (RY on NYSE and TSX), and AmSouth Bancorporation (ASO on NYSE) today announced the signing of an agreement pursuant to which RBC Centura Bank will acquire 39 branches in Alabama owned by AmSouth Bank. The acquisition, which is expected to be completed in March 2007, is subject to customary closing conditions, including approval by U.S. federal and state regulators. Terms of the transaction were not disclosed.

"Alabama is a strategic and logical extension of our current footprint and banking center network," said Scott Custer, chief executive officer of RBC Centura. "Key Alabama markets closely resemble other diverse and growing markets in which RBC Centura has had a long-time presence and solid understanding."

The Alabama economy has grown faster than the broader U.S. economy since 2001, a trend that is expected to continue. In addition, job growth in the state has been faster than the national average since early 2004 and business spending through 2006 is expected to continue to be strong. "This acquisition provides us with an attractive client and business base that supports RBC Centura's overall strategy of disciplined, affordable investments to expand our distribution network," said Custer.

Acquiring the 39 branches provides RBC Centura with immediate scale and assets in Alabama, making RBC Centura the state's seventh largest financial institution by deposits. Combined, the 39 branches RBC Centura is acquiring have approximately $1.5 billion in loans and $2.0 billion in deposits as of July 31, 2006. The branches are being divested by

 **Jump To**

▶ 2014 News Releases

▶ 2013 News Releases

▶ 2012 News Releases

▶ 2011 News Releases

⬩ 2010 News Releases

▶ 2009 News Releases

▶ 2008 News Releases

 **Take Action**

Contact a member of the Media Relations Team

 **In the News**

RBC PMI™ signals solid output growth in February (14.03.03)

RBC seeks emerging painters to enter 16th annual RBC Canadian Painting Competition (14.02.21)





**Federal Deposit
Insurance Corporation**
Each depositor insured to at least $250,000 per insured bank

BankFind Home    Return to BankFind Results                Glossary    Questions & Suggestions

# RBC Bank (USA) (FDIC #: 33184)

Status: **Inactive** • Inactive as of March 2, 2012
RBC Bank (USA) was merged or acquired without government assistance
Data as of: April 2, 2014

| Print this page | Download |



| Overview | Locations |
| History | Identifications |
| Financials | |

### History of RBC Bank (USA) (FDIC #: 33184) in Rocky Mount, NC

This institution is currently part of PNC Bank, National Association, Wilmington, DE (FDIC #: 6384)

☐
   Show Acquisitions

| Date | Event |
|------|-------|
| 11/3/1990 | Institution established: Original name:Centura Bank (33184) |
| 10/30/2001 | Changed name to RBC Centura Bank (33184) |
| 10/12/2006 | Moved bank headquarters from ROCKY MOUNT, NC to RALEIGH, NC |
| 4/5/2008 | Changed name to RBC Bank (USA) (33184) |
| 3/2/2012 | **Merged into and subsequently operated as part of PNC Bank, National Association (6384) in WILMINGTON, DE** |
| 9/4/2012 | Reorganized |

Home | Contact Us | Privacy Policy | Search

**Exhibit B**

# Purchase Agreement



THIS PURCHASE AGREEMENT (this "**Agreement**") is entered into as of July _18_, 2016 (the "**Effective Date**") by and between DILKS & KNOPIK, LLC, a Washington limited liability company ("**Purchaser**"), and PNC BANK, NATIONAL ASSOCIATION ("**Seller**").

## BACKGROUND

A.    Seller may be the current owner of each of the claims identified on Schedule 1 attached (individually, a "**Claim**" and collectively, the "**Claims**").

B.    Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, all of Seller's right, title and interest in and to each Claim, if any.

## TERMS

NOW, THEREFORE, in consideration of the foregoing premises and mutual agreements herein contained, Seller and Purchaser, intending to be legally bound hereby, agree as follows:

1.    Sale and Purchase of Claims.  Seller agrees to sell, without recourse, representation, warranty or guaranty of any kind, other than as expressly provided in Section 5 of this Agreement, and Purchaser agrees to purchase, all of Seller's right, title and interest in and to each Claim, if any, subject to and in accordance with the terms of this Agreement.  PURCHASER ACKNOWLEDGES AND AGREES THAT THE ASSIGNMENT, SALE AND TRANSFER OF EACH CLAIM TO PURCHASER CONTEMPLATED BY THIS AGREEMENT ARE MADE WITHOUT RECOURSE OF ANY KIND TO SELLER, AND ARE MADE ON AN "AS IS", "WHERE IS" BASIS, "WITH ALL FAULTS" AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE WHATSOEVER BY SELLER, OTHER THAN THE SPECIFIC REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION 5 OF THIS AGREEMENT.

2.    Purchase Price.  The purchase price for each Claim (the "**Purchase Price**") shall be calculated, as follows:

2.1    with respect to each Claim having a face amount equal to or greater than Three Hundred Dollars ($300.00) but less than or equal to Five Hundred Dollars ($500.00), an amount equal to redacted of such Claim, as set forth on Schedule 1 attached hereto; and

3.    with respect to each Claim having a face amount less than Three Hundred Dollars ($300.00), an amount equal to redacted of such Claim, as set forth on Schedule 1 attached hereto.

4.    Claims Reconciliation.  Within ten (10) days after the close of each calendar quarter, commencing September 30, 2016, Purchaser shall provide to Seller a reconciliation statement, in form and substance reasonably satisfactory to Seller, reflecting all proceeds received by Purchaser during the immediately preceding calendar quarter with respect to the Claims, which reconciliation statement shall be certified by Purchaser as true, complete and correct and duly executed by Purchaser. If and to the extent Seller receives proceeds on account of any Claim in excess of the amount of such Claim, as set forth on Schedule 1 attached hereto, Purchaser shall pay to Seller, together with such reconciliation statement, an

Claims <= $500 (MISC)



amount equal to the difference between (a) the Purchase Price for such Claim that Purchaser would have paid in accordance with Section 2 above if Schedule 1 attached hereto had listed the correct amount of such Claim (the "**Adjusted Purchase Price**") and (b) the Purchase Price for such Claim that Purchaser paid at the Closing; it being acknowledged and agreed that if Purchaser receives more than Five Hundred Dollars ($500.00) with respect to any Claim, the Adjusted Purchase Price for such Claim shall be deemed to be an amount equal to redacted of such Claim.

5.      Items Delivered at or after Closing.

       5.1      Seller Items.  At the consummation of the transactions contemplated by this Agreement (the "**Closing**"), Seller shall deliver to Purchaser a general assignment with respect to the Claims (the "**Assignment**"), substantially in the form attached hereto as Exhibit A, duly executed by Seller.

       5.2      Purchaser Items.  At the Closing, Purchaser shall deliver to Seller:

            5.2.1      an amount equal to the aggregate Purchase Price with respect to all Claims, by Purchaser's plain check; and

            5.2.2      an original of the Assignment, countersigned by Purchaser.

6.      Representations and Warranties of Seller.  Seller hereby represents and warrants to Purchaser that:

       6.1      Organization.  Seller is a national banking association duly organized and existing under the laws of the United States of America.

       6.2      Authority.  Seller (a) has full power, authority and legal right to execute, deliver and perform this Agreement, (b) has taken all necessary action to duly and validly authorize the execution, delivery and performance of this Agreement and the transactions contemplated by this Agreement, and (c) has duly and properly executed and delivered this Agreement.

       6.3      Enforceability.  This Agreement and the Assignment, when duly executed and delivered by Seller, will constitute valid and legally binding obligations of Seller and will be enforceable against Seller in accordance with their terms, except as enforcement might be limited by bankruptcy, insolvency, reorganization or similar laws affecting the enforcement of rights generally and by general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law).

Except as set forth herein, neither Seller, nor any parent, subsidiary, participant, co-lender, predecessor, or affiliate of Seller, nor any of their respective officers, directors, employees, agents, attorneys, predecessors, successors and assigns, makes any further representation or warranty with respect to any Claim, or the transactions contemplated by this Agreement.

7.      Representations and Warranties of Purchaser.  Purchaser hereby represents and warrants to Seller, and covenants to Seller, that:

       7.1      Organization.  Purchaser is a limited liability company, duly organized or formed, as applicable, validly existing and in good standing under the laws of the State of Washington.

2


Exhibit C

7.2 <u>Authority</u>. Purchaser (a) has full power, authority and legal right to execute, deliver and perform this Agreement, (b) has taken all necessary action to duly and validly authorize the execution, delivery and performance of this Agreement and the transactions contemplated by this Agreement, and (c) has duly and properly executed and delivered this Agreement.

7.3 <u>Enforceability</u>. This Agreement and the Assignment, when duly executed and delivered by Purchaser, will constitute valid and legally binding obligations of Purchaser and will be enforceable against Purchaser in accordance with their terms, except as enforcement might be limited by bankruptcy, insolvency, reorganization or similar laws affecting the enforcement of rights generally and by general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law).

7.4 <u>Noncontravention</u>. Purchaser's performance of its duties and obligations under this Agreement will not conflict with, result in a breach of or default under, or be adversely affected by, any agreements, instruments, decrees, judgments, injunctions, orders, writs, laws, rules or regulations, or any determination or award of any arbitrator to which Purchaser is a party or by which it is bound.

7.5 <u>Seller's Information</u>. Purchaser has not relied and shall not rely upon any representation or warranty made, or information furnished by Seller, or any of its employees, agents, attorneys, representatives or independent contractors, other than as expressly provided in Section 5 of this Agreement. Purchaser acknowledges and agrees that Seller has not made, and is not making, any representation or warranty to Purchaser or any of its officers, directors, managers, employees or agents, express or implied, regarding, concerning or pertaining to (i) Seller's right, title or interest in or to any Claim; (ii) the collectability of any Claim; (iii) the existence or basis for any claim, counterclaim, defense, or offset relating to any Claim; or (iv) any facts or matters relating or pertaining to any of the foregoing.

7.6 <u>Business and Financial Experience</u>. Purchaser has knowledge and experience in financial and business matters which enables Purchaser to evaluate the merits and risks of the transactions contemplated by this Agreement.

7.7 <u>No Recourse</u>. The sale of the Claims, as contemplated by this Agreement, is given without recourse. In the event Seller is unable to collect any sum on account of any Claim, Purchaser shall have no recourse against or right to indemnification or contribution from Seller therefor.

7.8 <u>Brokers.</u> Purchaser has not dealt with any broker, agent, finder or other person or entity in connection with the transaction contemplated by this Agreement that would give rise to a claim for a brokerage commission, finder's fee or other form of compensation. Seller shall have no liability for the payment of any brokerage fees, commissions, finder's fees or other forms of compensation due and payable to any person or entity (including any broker, agent or finder or other person or entity employed or retained by, or on behalf of, Purchaser) in connection with the transactions contemplated by this Agreement.

7.9 <u>Ownership of Claims</u>. Purchaser believes, after due inquiry, that Seller is the current owner of all right, title and interest in and to each Claim.

7.10 <u>Survival</u>. All representations and warranties of Purchaser contained in this Section shall survive the Closing.

8. <u>Disclaimer of Warranties</u>. Except as expressly set forth in Section 5 of this Agreement, neither Seller nor any of its officers, directors, employees, attorneys, representatives, or agents has made or hereby makes any representation or warranty to Purchaser or any of its officers, directors, managers,

3

Exhibit C

employees or agents, express or implied, regarding, concerning or pertaining to (i) Seller's right, title or interest in or to any Claim; (ii) the collectability of any Claim; (iii) the existence or basis for any claim, counterclaim, defense, or offset relating to the Claim; or (iv) any facts or matters relating or pertaining to any of the foregoing. WITHOUT LIMITING THE FOREGOING, THIS AGREEMENT AND THE ASSIGNMENT, SALE AND TRANSFER OF THE CLAIMS TO PURCHASER CONTEMPLATED BY THIS AGREEMENT ARE MADE WITHOUT RECOURSE OF ANY KIND TO SELLER, AND ARE MADE ON AN "AS IS", "WHERE IS" BASIS, "WITH ALL FAULTS" AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE WHATSOEVER BY SELLER, OTHER THAN THE SPECIFIC REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION 5 OF THIS AGREEMENT.

9.    Indemnification. Purchaser, together with its successors and assigns, shall indemnify, save and keep Seller, and any parent, subsidiary, participant, co-lender, predecessor, and affiliate of Seller, and their respective officers, directors, employees, agents, attorneys, predecessors, successors and assigns (each an "**Indemnified Person**") harmless against any and all liabilities, claims, actions or causes of action, assessments, losses, fines, penalties, costs, damages and expenses, including reasonable attorneys' fees, sustained or incurred by any Indemnified Person as a result of, or arising out of, or by virtue of: (a) any matter, event, occurrence or thing with respect to, arising out of, or relating to any Claim and arising from and after the Closing, and (b) the inaccuracy or breach of any representation, warranty or covenant made or given by Purchaser in this Agreement.

Each Indemnified Person may defend any such claim or cause of action brought or asserted against such Indemnified Person arising out of any of the foregoing at the expense of Purchaser, with counsel designated by such Indemnified Person and to the exclusion of Purchaser. Alternatively, such Indemnified Person may call upon Purchaser to defend any such action at Purchaser's sole cost and expense. Such Indemnified Person may, in such Indemnified Person's sole and exclusive discretion, adjust, settle, or compromise any such claim or cause of action made upon or brought against such Indemnified Person, and Purchaser shall indemnify such Indemnified Person for any such amounts adjusted, settled or compromised, as well as all costs and expenses, including reasonable attorneys' fees incurred in connection therewith. Purchaser acknowledges and agrees that Purchaser's obligations hereunder are unconditional and unlimited, shall survive the Closing, and shall continue in full force and effect at all times after the Closing unless specifically terminated in writing by a duly authorized officer of Seller.

10.    Purchaser's Waivers. Purchaser, all successors or assignees thereof, and all subsequent transferees of each Claim hereby waive any right or cause of action they may now or in the future have against Seller and its affiliates, employees, agents, officers, directors, attorneys, representatives, successors and assigns as a result of the purchase of such Claim; *provided, however*, that this waiver shall not extend to any liability of Seller arising from Seller's material breach of any representation, warranty or covenant of Seller contained in this Agreement.

11.    Notices. All notices, demands, requests, consents, approvals and other communications required or permitted under this Agreement ("**Notices**") must be in writing and will be effective upon receipt. Notices may be given in any manner to which the parties may separately agree, including electronic mail. Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving Notices. Regardless of the manner in which provided, Notices may be sent to a party's address set forth below or to such other address as any party may give to the other in writing for such purpose in accordance with this Section:

If to Seller:

PNC Bank, National Association
3232 Newmark Drive (B6-YM15-01-6)

4

Exhibit C

Miamisburg, OH 45342
Attention: Martin J. Weiss,
Vice President
Facsimile No.: (888) 331-7382
Email: Martin.Weiss@PNC.com

If to Purchaser:    Dilks & Knopik, LLC
35308 SE Center Street
Snoqualmie, WA 98065
Attention: Aristotle Eddings
Facsimile No.: (877) 209-8249
Email: aristotle.eddings@dilksknopik.com

12.    <u>Miscellaneous</u>.

    12.1    <u>Entire Agreement</u>. This Agreement, including all exhibits, schedules, lists and other documents referred to herein which form a part hereof, contains the entire understanding of the parties hereto with respect to the subject matter contained herein. All prior or contemporaneous oral or written agreements pertaining to the subject matter hereof are superseded.

    12.2    <u>Interpretation</u>. Unless Seller and Purchaser otherwise agree in writing, the singular includes the plural and the plural the singular; references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; and references to sections, exhibits or schedules are to those of this Agreement.

    12.3    <u>Severability</u>. In the event any one or more of the provisions (or any part of any provision) contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision (or remaining part of the affected provision(s)) of this Agreement, and this Agreement shall be construed to effect the purposes of this Agreement as if such invalid, illegal, or unenforceable provision (or part thereof) had never been contained herein and to that extent, but only to that extent, the provisions of the Agreement are severable.

    12.4    <u>Amendment</u>. This Agreement may be amended only by a written instrument executed by the parties hereto or their respective successors or assigns.

    12.5    <u>Waivers</u>. Any condition to a party's obligation hereunder may only be waived by such party in writing.

    12.6    <u>Expenses</u>. Except as otherwise expressly provided in this Agreement, each party shall be responsible for any legal or other expenses which it incurs in connection with the transactions contemplated by this Agreement.

    12.7    <u>Successors and Assigns; Assignment</u>. The terms and provisions of this Agreement shall be binding upon, shall inure to the benefit of, and shall be enforceable by, the successors and assigns of the parties hereto, provided that Purchaser shall not have the right to assign this Agreement without the prior written consent of Seller.

5

Exhibit C

12.8    No Third Party Beneficiaries.  This Agreement is for the sole and exclusive benefit of the parties hereto, and none of the provisions of this Agreement shall be deemed to be for the benefit of any other person or entity.

12.9    Advice of Counsel.  Each of the parties hereto has been involved in the review, negotiation, and execution of this Agreement and each has had the opportunity to receive independent legal advice from attorneys of its choice with respect to the advisability of making and executing of this Agreement.  In the event of any dispute or controversy regarding authorship of this Agreement, the parties hereto shall be conclusively deemed to be the joint authors hereof, and no part of this Agreement shall be interpreted against either party due to authorship.

12.10    Headings.  The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

12.11    Further Assurances.  Seller shall execute and deliver such documents and instruments and take such further actions as Purchaser may reasonably request in order to consummate the transactions contemplated by this Agreement, provided that such request is made within ninety (90) days after the Effective Date.  In the event that Purchaser wishes Seller to execute assignments or other documents after the Closing, Purchaser shall furnish Seller with copies of the proposed additional assignments or documents for review, approval or amendment, each of which shall be in form and substance satisfactory to Seller and shall be prepared and filed or recorded by Purchaser at Purchaser's sole cost and expense.  Seller shall execute such documents as it elects in the exercise of its reasonable discretion as are reasonably necessary to more fully vest each Claim in Purchaser.  All such additional and revised assignments and other documentation shall be without recourse, representation or warranty, express or implied, other than as expressly provided in Section 5 of this Agreement.

12.12    Governing Law.  This Agreement has been negotiated in and shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to the principles thereof relating to conflict of laws.

12.13    Jurisdiction and Venue.  Purchaser irrevocably consents to the jurisdiction and venue of the Courts of Common Pleas of Philadelphia County, Commonwealth of Pennsylvania or the United States District Court for the Eastern District of Pennsylvania in any and all actions and proceedings whether arising hereunder or under any other agreement or undertaking between Seller and Purchaser, and irrevocably agrees to service of process by certified mail, return receipt requested to the address of Purchaser set forth herein.

12.14    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Any counterpart may be delivered by facsimile or by other electronic format (i.e., "pdf" or "tif"), each of which shall have the same force and effect as if bearing original signatures.

12.15    Time of the Essence.  The parties hereto acknowledge that time is of the essence in the performance of all obligations under this Agreement.

12.16    Business Days.  When used in this Agreement, the term "business day" shall mean any day other than a Saturday or Sunday or a legal holiday on which commercial banks are authorized or required by law to be closed for business in the Commonwealth of Pennsylvania.

12.17    Limitation of Remedies.  In no event shall either party be liable to the other for any consequential, incidental, special or punitive damages arising under the transactions contemplated by this

6

Case 93-11016    Doc 22    Filed 02/16/17    Entered 02/16/17 10:50:31    Desc Main
Document      Page 11 of 27


Exhibit C

Agreement. In no event shall Purchaser have the right to seek any equitable remedies including, without limitation, specific performance, in the event of any default by Seller hereunder.

12.18 <u>WAIVER OF JURY TRIAL</u>. THE PARTIES HERETO, ON BEHALF OF THEMSELVES AND THEIR SUCCESSORS AND ASSIGNS, AGREE THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT OR INSTITUTED BY OR AGAINST ANY PARTY HERETO OR ANY SUCCESSOR OR ASSIGN OF ANY PARTY HERETO, ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT, OR ANY FACTS OR CIRCUMSTANCES IN WHICH THIS AGREEMENT IS INVOLVED IN ANY WAY, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. EACH PARTY HERETO KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. EACH OF THE PARTIES HERETO REPRESENTS AND WARRANTS THAT THIS WAIVER OF THE RIGHT TO A JURY TRIAL HAS BEEN MADE AFTER CONSULTATION WITH LEGAL COUNSEL.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

7

Exhibit C

IN WITNESS WHEREOF, the undersigned have caused this Purchase Agreement to be executed as a document under seal as of the date first written above.

WITNESS / ATTEST:

DILKS & KNOPIK, LLC, a Washington limited liability company

By: _____ (SEAL)

Name: Aristotle Eddings
Title: Account Manager
(Include title only if an officer of entity signing to the right)

Name: Brian Dilks
Title: Manager


PNC BANK, NATIONAL ASSOCIATION

By: _____ (SEAL)

Name: Martin J. Weiss
Title: Vice President

8

Exhibit C

IN WITNESS WHEREOF, the undersigned have caused this Purchase Agreement to be executed as a document under seal as of the date first written above.

WITNESS / ATTEST:

DILKS & KNOPIK, LLC, a Washington limited liability company

By: _____
                                            (SEAL)

Name: Aristotle Eddings
Title: Account Manager
(Include title only if an officer of entity signing to the right)

Name: Brian Dilks
Title: Manager


PNC BANK, NATIONAL ASSOCIATION

By: _____
                                            (SEAL)

Name: Martin J. Weiss
Title: Vice President

8

Exhibit C

# Schedule 1

## Claims

| | Creditor | Case Number | Debtor | Claim Number | Jurisdiction | Unclaimed Amount |
|---|---|---|---|---|---|---|
| 1 | Riggs Bank | 97-10031 | Patricia A. Williams | | District Of Maryland | $ 418.30 |
| 2 | Provident National Bank | 92-16445 | Louis R. Violette | | District Of Maryland | $ 405.72 |
| 3 | Provident Bank | 89-50219 | Sherwood Ford, Inc. | 167 | District Of Maryland | $ 182.00 |
| 4 | PNC James R. Reidhead | 82-00031 | Robitaille & Sons Enterprises | | District of New Hampshire | $ 437.08 |
| 5 | PNC Mortgage | 92-41328 | G. Wawro | | Eastern District of Texas | $ 233.43 |
| 6 | Bank of Hanover & Trust | 05-08743 | John R. Smith | 10 | Middle District Of Pennsylvania | $ 432.07 |
| 7 | PNC Bank | 10-72733 | Darlene Katherine Hornsby | 3 | Northern District of California | $ 265.25 |
| 8 | PNC Bank | 97-31486 | Patrick J. Shortle | 19 | Northern District of California | $ 226.78 |
| 9 | Amsouth Bank | 02-11047 | Timothy Horne | 3 | Northern District Of Mississippi | $ 263.46 |
| 10 | FIRST OF AMERICA BANK | 95-41284 | Lillian E. Scott-Moore | | Northern District Of Ohio | $ 497.41 |
| 11 | National City Bank | 89-11073 | William A Weems Jr | | Northern District Of Ohio | $ 321.41 |
| 12 | NATIONAL CITY BANK | 87-14246 | Leroy Payton Jr | | Northern District Of Ohio | $ 295.00 |
| 13 | NATIONAL CITY BANK | 89-11380 | John Paul Laubenthal | | Northern District Of Ohio | $ 202.51 |
| 14 | NATIONAL CITY BANK | 88-32538 | William C & Sharon A Worcester | | Northern District Of Ohio | $ 140.99 |
| 15 | NATIONAL CITY BANK1 | 87-14246 | Leroy Payton Jr | | Northern District Of Ohio | $ 121.00 |
| 16 | NATIONAL CITY BANK | 02-44152 | Christopher Jason Bell | | Northern District Of Ohio | $ 427.33 |
| 17 | PNC Bank | 12-10058 | George Ronald Fox | 19 | Northern District of Texas | $ 375.05 |
| 18 | NATL. CITY BANK MC | 95-43148 | Robert Wallace Jr. | 7 | Northern District of Texas | $ 337.41 |
| 19 | Provident Auto Leasing Co | 01-46885 | Andrea O. Thompson | 1 | Northern District of Texas | $ 336.41 |
| 20 | PNC NATIONAL BANK | 98-35718 | Julio Ramos | 2 | Northern District of Texas | $ 173.32 |
| 21 | Amsouth | 93-11016 | Sheila Hambright | | Southern District of Alabama | $ 441.69 |
| 22 | Amsouth | 87-10314 | Michael D. Swindle | | Southern District of Alabama | $ 209.56 |
| 23 | Amsouth | 93-10780 | J Lester Byrd | | Southern District of Alabama | $ 202.59 |
| 24 | PNC Bank | 98-06662 | Jeffrey A and Julia L Bozarth | 6 | Southern District of Indiana | $ 467.29 |
| 25 | PNC Bank, N.A. | 14-10562 | Robert Arthur Rogers | 4 | Southern District of Indiana | $ 461.36 |
| 26 | National City Bank | 95-03439 | Danny & Tracy Cottrell | 9 | Southern District Of Iowa | $ 296.15 |
| 27 | National City | 11-33412 | Kathryn J. Bennett | 2 | Southern District of Ohio | $ 314.02 |
| 28 | PCFS Financial Services | 03-34796 | Nicole M & Warren D Carney | 7 | Southern District of Texas | $ 405.80 |
| 29 | PNC Bank NA | 95-10864 | Emma C. and Eugene Frazier | | Western District of Texas | $ 340.61 |
| 30 | PNC Bank NAA | 95-11635 | Oscar T. and Elida G. Hernandez | | Western District of Texas | $ 312.49 |
| 31 | PNC BANK | 96-51102 | Roy R. Pedroza | | Western District of Texas | $ 139.63 |

Exhibit C

**EXHIBIT A**

# General Assignment



THIS GENERAL ASSIGNMENT (this "**Assignment**") is made as of July $\cancel{18}$, 2016 by PNC Bank, National Association ("**Assignor**"), to DILKS & KNOPIK, LLC, a Washington limited liability company ("**Assignee**").

## RECITALS

A.     Assignor and Assignee are parties to that certain Purchase Agreement of even date herewith (the "**Agreement**"). All capitalized terms not otherwise defined in this Assignment shall have the meanings ascribed to such terms in the Agreement.

B.     Pursuant the Agreement, Assignor agreed to sell to Assignee all of Assignor's right, title and interest, if any, in and to each Claim, as described on Schedule 1 attached to the Agreement.

C.     This Assignment is being delivered by Assignor to Assignee in accordance with and subject to the terms of the Agreement to effect the assignment contemplated thereby.

## ASSIGNMENT

NOW, THEREFORE, in consideration of the receipt by Assignor of the payment of the Purchase Price, as provided in the Agreement, Assignor hereby assigns and transfers to Assignee all right, title and interest of Assignor in and to the Claims, as identified on Schedule 1 attached hereto (the "**Assigned Claims**").

Except as expressly set forth in Section 5 of the Agreement, neither Assignor nor any of its officers, directors, employees or agents makes any representation or warranty to Assignee or any of its officers, directors, managers, employees or agents, express or implied, regarding, concerning or pertaining to the existence or basis for any claim, counterclaim, defense, or offset relating to any Assigned Claim or any facts or matters relating or pertaining to any of the foregoing. WITHOUT LIMITING THE FOREGOING, THIS ASSIGNMENT AND THE ASSIGNMENT, SALE AND TRANSFER OF THE ASSIGNED CLAIMS TO ASSIGNEE CONTEMPLATED BY THIS ASSIGNMENT ARE MADE WITHOUT RECOURSE OF ANY KIND TO ASSIGNOR, AND ARE MADE ON AN "AS IS", "WHERE IS" BASIS, "WITH ALL FAULTS" AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE WHATSOEVER BY ASSIGNOR, OTHER THAN THE SPECIFIC REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION 5 OF THE AGREEMENT.

Assignor restates each of the representations and warranties of Assignor under the Agreement as if fully set forth herein, and hereby represents and warrants to Assignee that each of the representations and warranties of Assignor set forth in the Agreement are true and correct as if made as of the date of this Assignment.

Assignee restates each of the representations, warranties and acknowledgments of Assignee under the Agreement as if fully set forth herein, and hereby represents and warrants to Assignor that each of the representations and warranties of Assignee set forth in the Agreement are true and correct as if made as of


Exhibit C

the date of this Assignment.

Nothing in this Assignment shall be construed to be a modification of or limitation on any provision of the Agreement, including the representations, warranties and covenants set forth therein.

This Assignment is being delivered pursuant and subject to all of the terms and conditions of the Agreement. To the extent that there is any conflict between the terms of this Assignment and the terms of the Agreement, the terms of the Agreement shall prevail.

This Assignment has been negotiated in and shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to the principles thereof relating to conflict of laws.

ASSIGNOR AND ASSIGNEE, ON BEHALF OF THEMSELVES AND THEIR SUCCESSORS AND ASSIGNS, AGREE THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT OR INSTITUTED BY OR AGAINST ANY PARTY HERETO OR ANY SUCCESSOR OR ASSIGN OF ANY PARTY HERETO, ARISING OUT OF OR IN ANY WAY RELATING TO THIS ASSIGNMENT, OR ANY FACTS OR CIRCUMSTANCES IN WHICH THIS ASSIGNMENT IS INVOLVED IN ANY WAY, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. EACH PARTY HERETO KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. EACH OF THE PARTIES HERETO REPRESENTS AND WARRANTS THAT THIS WAIVER OF THE RIGHT TO A JURY TRIAL HAS BEEN MADE AFTER CONSULTATION WITH LEGAL COUNSEL.

This Assignment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Exhibit C

IN WITNESS WHEREOF, the undersigned have caused this General Assignment to be executed as a document under seal of the date and year first written above.

WITNESS / ATTEST:

DILKS & KNOPIK, LLC, a Washington limited liability company

By: _____ (SEAL)

Name: Aristotle Eddings
Title: Account Manager
(Include title only if an officer of entity signing to the right)

Name: Brian Dilks
Title: Manager

PNC BANK, NATIONAL ASSOCIATION

By: _____ (SEAL)

Name: Martin J. Weiss
Title: Vice President

Exhibit C

# Schedule 1

## Claims

| # | Creditor | Debtor | Case Number | Claim Number | Jurisdiction | Unclaimed Amount |
|---|---|---|---|---|---|---|
| 1 | Riggs Bank | Patricia A. Williams | 97-10031 | | District Of Maryland | $ 418.30 |
| 2 | Provident National Bank | Louis R. Violette | 92-16445 | | District Of Maryland | $ 405.72 |
| 3 | Provident Bank | Sherwood Ford, Inc. | 89-50219 | 167 | District Of Maryland | $ 182.00 |
| 4 | PNC James R. Reidhead | Robitaille & Sons Enterprises | 82-00031 | | District of New Hampshire | $ 437.08 |
| 5 | PNC Mortgage | G. Wawro | 92-41328 | | Eastern District of Texas | $ 233.43 |
| 6 | Bank of Hanover & Trust | John R. Smith | 05-08743 | 10 | Middle District Of Pennsylvania | $ 432.07 |
| 7 | PNC Bank | Darlene Katherine Hornsby | 10-72733 | 3 | Northern District of California | $ 265.25 |
| 8 | PNC Bank | Patrick J. Shortle | 97-31486 | 19 | Northern District of California | $ 226.78 |
| 9 | Amsouth Bank | Timothy Horne | 02-11047 | 3 | Northern District Of Mississippi | $ 263.46 |
| 10 | FIRST OF AMERICA BANK | Lillian E. Scott-Moore | 95-41284 | | Northern District Of Ohio | $ 497.41 |
| 11 | National City Bank | William A Weems Jr | 89-11073 | | Northern District Of Ohio | $ 321.41 |
| 12 | NATIONAL CITY BANK | Leroy Payton Jr | 87-14246 | | Northern District Of Ohio | $ 295.00 |
| 13 | NATIONAL CITY BANK | John Paul Laubenthal | 89-11380 | | Northern District Of Ohio | $ 202.51 |
| 14 | NATIONAL CITY BANK | William C & Sharon A Worcester | 88-32538 | | Northern District Of Ohio | $ 140.99 |
| 15 | NATIONAL CITY BANK1 | Leroy Payton Jr | 87-14246 | | Northern District Of Ohio | $ 121.00 |
| 16 | NATIONAL CITY BANK1 | Christopher Jason Bell | 02-44152 | | Northern District of Texas | $ 427.33 |
| 17 | PNC Bank | George Ronald Fox | 12-10058 | 19 | Northern District of Texas | $ 375.05 |
| 18 | NATL. CITY BANK MC | Robert Wallace Jr. | 95-43148 | 7 | Northern District of Texas | $ 337.41 |
| 19 | Provident Auto Leasing Co | Andrea O. Thompson | 01-46885 | 1 | Northern District of Texas | $ 336.41 |
| 20 | PNC NATIONAL BANK | Julio Ramos | 98-35718 | 2 | Northern District of Texas | $ 173.32 |
| 21 | Amsouth | Sheila Hambright | 93-11016 | | Southern District of Alabama | $ 441.69 |
| 22 | Amsouth | Michael D. Swindle | 87-10314 | | Southern District of Alabama | $ 209.56 |
| 23 | Amsouth | J. Lester Byrd | 93-10780 | | Southern District of Alabama | $ 202.59 |
| 24 | PNC Bank | Jeffrey A and Julia L Bozarth | 98-06662 | 6 | Southern District of Indiana | $ 467.29 |
| 25 | PNC Bank, N.A. | Robert Arthur Rogers | 14-10562 | 4 | Southern District of Indiana | $ 461.36 |
| 26 | National City Bank | Danny & Tracy Cottrell | 95-03439 | 9 | Southern District Of Iowa | $ 296.15 |
| 27 | National City | Kathryn J. Bennett | 11-33412 | 2 | Southern District Of Ohio | $ 314.02 |
| 28 | PCFS Financial Services | Nicole M & Warren D Carney | 03-34796 | 7 | Southern District of Texas | $ 405.80 |
| 29 | PNC Bank NA | Emma C. and Eugene Frazier | 95-10864 | | Western District of Texas | $ 340.61 |
| 30 | PNC Bank NAA | Oscar T. and Elida G. Hernandez | 95-11635 | | Western District of Texas | $ 312.49 |
| 31 | PNC BANK | Roy R. Pedroza | 96-51102 | | Western District of Texas | $ 139.63 |

Exhibit C



# CERTIFICATE

The undersigned, <u>Ruby G. Altizer</u>, a duly appointed <u>Assistant Secretary</u> of PNC Bank, National Association (the "Bank"), does hereby certify that:

(1)    the following is a true and correct copy of an excerpt from the By-Laws of the Bank and a true and correct copy of Resolutions adopted by the Board of Directors of the Bank on April 28, 2015;

(2)    the excerpt from the By-Laws of the Bank and Resolutions described above are in full force and effect as of the date of this Certificate; and

(3)    <u>Martin James Weiss</u> is a duly appointed <u>Vice President</u> of the Bank.

*Excerpt from By-Laws of PNC Bank, National Association*

"<u>Article VI</u>. <u>General Powers of Officers</u>

<u>Section 1</u>. The corporate seal of the Bank may be imprinted or affixed by any process. The Secretary and any other officers authorized by resolution of the Board of Directors shall have authority to affix and attest the corporate seal of the Bank.

<u>Section 2.</u> The authority of officers and employees of this Bank to execute documents and instruments on its behalf in cases not specifically provided for in these By-Laws shall be as determined from time to time by the Board of Directors, or, in the case of employees, by officers in accordance with authority given them by the Board of Directors."

*Board Resolutions Adopted April 28, 2015*

WHEREAS, pursuant to the By-Laws of PNC Bank, National Association (the "Bank"), the board of directors ("Board"), seeks to grant authority to certain officers to take the actions evidenced herein.

NOW, THEREFORE, BE IT RESOLVED, that the Chairman of the Board, the Chief Executive Officer, the President, each Senior Vice Chairman, each Vice Chairman, each Executive Vice President, each Senior Vice President, each Vice President, each Assistant Vice President, the Treasurer and each Assistant Treasurer, the Cashier and each Assistant Cashier, the Secretary and each Assistant Secretary, each Trust Officer and Assistant Trust Officer, each Chief Investment Officer, each Regional President or chief executive of a business region, the General Counsel, the Senior Deputy General Counsel, each Deputy General Counsel and each Chief Counsel (the "Authorizing Officers") of PNC Bank, National Association (the "Bank") shall have the authority to affix and attest the seal of the Bank;

RESOLVED FURTHER, that the Authorizing Officers of the Bank, and any other officers acting at the discretion of any officer authorized to affix and attest the seal of the Bank, are and each of them is hereby authorized and empowered in the name and on behalf of the Bank to execute, acknowledge and deliver any and all agreements, instruments, or other documents relating to the

**Member of The PNC Financial Services Group**

One PNC Plaza  249 Fifth Avenue  Pittsburgh  Pennsylvania  15222-2707

www.pnc.com



Exhibit C

property or rights of all kinds held or owned by the Bank or to the operation of the Bank, either for its own account or in any agency or fiduciary capacity. Notwithstanding the foregoing, any and all agreements of sale, contracts, deeds and other documentation pertaining to the purchase, sale or transfer of real estate or buildings occupied by the Bank in the transaction of its business shall be executed in accordance with the terms of resolutions adopted from time to time in connection therewith and specifically designating the officer or officers authorized to execute the same;

RESOLVED FURTHER, that the Bank's Chairman of the Board, Chief Executive Officer, President, Secretary, or any Senior Vice Chairman, Vice Chairman, or Executive Vice President or any of them, is authorized to name, constitute and appoint such person or persons as they or any of them deem necessary as attorney-in-fact for the Bank, to execute documents for and in its name and stead, and to perform all other acts, deeds and things as may be required to effect the particular transactions for which the appointment is made;

RESOLVED FURTHER, that the Bank's Chairman of the Board, Chief Executive Officer, President, Secretary, or any Senior Vice Chairman, Vice Chairman, or Executive Vice President or any of them, is authorized to name, constitute and appoint such person or persons employed by the Corporation or any of its wholly owned direct or indirect subsidiaries as they or any of them deem necessary as attorney-in-fact for the Bank, to execute documents for and in its name and stead, and to perform all other acts, deeds and things as may be required to effect the particular transactions for which the appointment is made;

RESOLVED FURTHER, that any officer of the Bank and any non-officer employee of the Corporation or the Bank (or any affiliate of the Corporation or Bank) designated in writing by the Chief Executive Officer, the President, any Senior Vice Chairman, Vice Chairman, Executive Vice President or Senior Vice President of the Corporation or Bank, are each hereby authorized and empowered:

    (a)    To sign or countersign checks, drafts, acceptances, guarantees of signatures on assignments of securities, certificates of securities of entities for whom the Bank is acting as registrar or transfer agent or in a fiduciary or representative capacity, correspondence or other papers or documents not ordinarily requiring execution under seal;

    (b)    To receive any sums of money or property due or owing to the Bank in its own right, as an agent for another party, or in any fiduciary or representative capacity and, either as attorney-in-fact for the Bank or otherwise, to sign or countersign agreements, instruments, or other documents related to the foreclosure of residential real estate loans owned or serviced by the Corporation or the Bank or the enforcement of any other rights and remedies with respect to such loans (including, without limitation, in a bankruptcy or insolvency proceeding), including, without limitation, correspondence, affidavits, certifications, declarations, deeds, substitutions of trustee, verifications, assignments, powers of attorney, sales contracts or any other papers or documents, to execute any instrument of satisfaction for any mortgage, deed of trust, judgment or lien in the Office of the Recorder of Deeds, Prothonotary, or other office or court of record in any jurisdiction, provided, however, that in respect to any mortgage or deed of trust made to this Bank as trustee for bondholders, the foregoing authority shall be exercised only pursuant to an authorization of the Board of Directors or committee of the Board of Directors with oversight of fiduciary risk;

General

RESOLVED FURTHER, that the Authorized Officers of the Bank, and each of them, are authorized to do any and all things and to take any and all actions in connection with these resolutions, including, but not limited to, the execution, delivery, acknowledgement, submitting, filing, recording and sealing of all documents, certificates, statements or other instruments, and the making of any expenditures, which such officers may deem necessary or advisable in order to carry out the intent and purposes of these resolutions;

Exhibit C

RESOLVED FURTHER, that all actions heretofore taken by any of the officers, representatives or agents of the Bank, by or on behalf of the Bank or any of its affiliates in connection with the foregoing resolutions be, and each of the same is, ratified and approved; and

RESOLVED FURTHER, that for purposes of the foregoing resolutions, the term "Authorized Officer" shall mean and include, as applicable, the Chairman, Chief Executive Officer, President, Senior Vice Chairman, Chief Financial Officer, Secretary or Treasurer of the Bank, or any Vice Chairman, Executive Vice President, Senior Vice President, Vice President, Assistant Secretary or Assistant Treasurer of the Bank or any other duly appointed officer of the Bank.

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and affixed the seal of the Association this 15th day of October, 2015.



Ruby G. Altizer

Exhibit C



## PNC

Martin J. Weiss
Vice President, Asset Resolution
T 937-910-4580  T 800-367-9305 Ext 937-910-4580
martin.weiss@pnc.com  F 888-331-7362

The PNC Financial Services Group
3202 Newmark Drive  B4-Y841-01-6
Miamisburg Ohio 45342



Exhibit C



Dilks | & | Knopik

*When Success Matters*

Brian Dilks
Managing Member

35308 SE Center Street
Snoqualmie, WA 98065
Ph. 877-836-5728 x 101
Fx. 877-209-8249
brian.dilks@dilksknopik.com

www.dilksknopik.com

**Exhibit C**



# Dilks | & | Knopik

## Statement of Authority

The undersigned being duly sworn, states that the below listed individuals are authorized to execute all claim documents on behalf of Dilks & Knopik, LLC, and its subsidiaries, as required for any and all claim(s) submitted for Unclaimed, Lost or Abandoned Property on the Company's behalf.

**Brian J Dilks – President – Managing Member**

**Jeff Hudspeth – Vice President – Sales**

**Andrew Drake – Vice President – Operations**

Dilks & Knopik, LLC

Caryn M Dilks
Managing Member
35308 SE Center Street
Snoqualmie, WA 98065
425-836-5728 x101



Subscribed and sworn to me this Wednesday, May 11, 2016

Notary Signature _____

Printed Name: _Andrew T Drake_

My Commission Expires: _9/9/19_



35308 SE Center Street
Snoqualmie, WA 98065

Phone 877-636-5728
Fax 8
Email admin@dilkslnopik.com

www.dilksknopik.com

<span style="color:red">**Exhibit C**</span>